IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THEODORE WIESINGER,<br>　　Plaintiff<br><br>　　　v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>　　Defendant. | )<br>)<br>)<br>)　2:14-CV-47<br>)<br>)<br>)<br>) |

REPORT AND RECOMMENDATION

I.　Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (ECF No.9) be denied; that the defendant's motion for summary judgment (Docket No.12 ) be granted, and that the decision of the Commissioner of Social Security be affirmed..

II.　Report

Presently before the Court for disposition are cross motions for summary judgment.

On January 10, 2014, Theodore Wiesinger, by his counsel, filed a complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§405(g) and 1383(c)(3) for review of the Commissioner's final determination disallowing his claim for a period of disability or for disability insurance benefits and supplemental security income benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 and 1381 cf.

The plaintiff filed an application for disability and supplemental security income benefits on July 9, 2010 (R.143-153). Benefits were denied on November 9, 2010 (R.88-97). On January 7, 2011, the plaintiff requested a hearing (R.98-99), and pursuant to that request a hearing was

conducted on March 15, 2012 (R.36-84). In a decision filed on May 16, 2012, an Administrative Law Judge denied benefits (R.18-30). On June 4, 2012, the plaintiff requested reconsideration of this determination (R.14), and upon reconsideration, and in a decision dated November 12, 2013, the Appeals Council affirmed the prior decision (R.1-3). The instant complaint was filed on January 10, 2014.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act..

It is provided in 42 U.S.C. Section 405(g) that:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999)

Presently before the Court for resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff is not disabled within the meaning of the Act.

At the hearing held on March 15, 2012 (R.36-84), the plaintiff appeared with counsel (R.38), and testified that he was born on March 18, 1952 (R.39); that he graduated from college (R.51); that he worked selling appliances and as a mortgage broker (R.42); that he is unable to work due to his inability to concentrate (R.43) and that he is receiving public assistance (R.46).

The plaintiff also testified that he suffers from depression and back pain due to sciatica and a torn right rotator cuff as well as degenerative disc disease and high blood pressure (R.43-44, 56); that he also suffers from anxiety (R.53); that he takes over the counter medication as well as prescription medication for his blood pressure and receives physical therapy (R.46, 56); that he does not take any medication for his mental health (R.53) that he can sit for about twenty minutes, has no problem standing and can lift ten to twenty pounds (R.47,49); that he experiences difficulty concentrating and is not computer literate (R.51-53); that he performs chores for his mother-in-law and his parents as well as church volunteer work (R.54-56); that he has an alcohol problem (R.58) and that he experiences memory difficulties (R.66).

At the hearing a vocational expert was called upon to testify (R.67-81). She characterized the plaintiff's past work as skilled to semi-skilled in nature which was sedentary to light in physical demands (R.68); when asked to assume an individual of the plaintiff's age, education and work experience who could lift ten to twenty pounds, the witness indicated that such an individual could perform some of the plaintiff's past work if he had maintained his license and of which there were many jobs (R.68-69, 74); however, if the individual was off task about fifteen percent of the time, she responded he could not be employed (R.69-70); however, she also testified that if he could not obtain the necessary licensing, he still had transferrable skills which he could apply to a large number of jobs (R.76). Additionally, she testified that if the individual had to take frequent work breaks he would not be employable (R.81).

The issue before the Court is whether or not the decision of the Commissioner is supported by substantial evidence.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

It is provided in 42 U.S.C. Section 1382c(a)(3) that:

> (A)... an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.
>
> (B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * *

(D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

It is also provided that:

Notwithstanding the provisions of subparagraphs (A) through (E), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

42 U.S.C. Section 1382c(3)(F).

Pursuant to the authorization contained in 42 U.S.C. Section 1382c(3)(D), the Commissioner has promulgated certain regulations for the implementation of the Supplemental Security Income Program. While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff is not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Commissioner.

The plaintiff attended an out-patient alcohol treatment program between April 8, 2009 and June 24, 2009 (R.320).

The plaintiff was treated at Passavant Hospital between October 8, 2009 and November 19, 2009 for a left inguinal hernia. A surgical repair was performed (R.212-222).

The plaintiff received chiropractic treatment between January 21, 2010 and March 31, 2010 for shoulder pain (R.223-235).

The plaintiff was treated for shoulder, neck and back pain at Three Rivers Orthopedic Associates on May 3, 2010 and a pain clinic visit was recommended (R.236-238).

The plaintiff was evaluated at St. Margaret Hospital between March 30, 2010 and May 12, 2010 at which time multilevel degenerative disc disease and a supraspinatus tear were diagnosed (R.239-241).

The plaintiff was treated at St. Margaret Hospital on July 18, 2010 for alcohol withdrawal (R.242-247).

The plaintiff received out-patient treatment at the Medical Center of Beaver County between July 18, 2010 and July 28, 2010 for alcohol withdrawal. He was transferred to Gateway Rehabilitation Center (R.248-265).

The plaintiff was treated by Dr. Henry Bakkila between July 22, 2009 and July 30, 2010. The plaintiff was diagnosed with a fatty liver, gall bladder stones, coronary artherosclerotic calcifications as well as alcoholism, left inguinal hernia, depression, sciatica and lumbar spinal stenosis (R.266-319).

The plaintiff was confined at Gateway Genesis from July 19, 2010 through August 10, 2010 for alcoholism. The prognosis was guarded (R.329).

In a report of a psychological evaluation conducted on September 21, 2010, Paul Bernstein, Ph.D. diagnosed alcohol dependence in early remission and depression. It was concluded that the plaintiff was capable of engaging in the activities of daily living. It was also observed that if the plaintiff remained sober he could function appropriately (R.321-328).

In a report of a psychiatric review completed on November 4, 2010, Manella Link, Ph.D. diagnosed an affective disorder evinced by a moor disorder and substance addiction. Limitations were said to be mild (R.330-343).

In a residual functional capacity assessment completed on November 8, 2010 (R.344-350), Dr. Ellen Wyszomierski determined that the plaintiff could lift twenty pounds occasionally, ten pounds frequently, and stand, walk or sit for about six hours.

In an employment assessment form completed on June 15, 2011, Dr. Henry Bakkila diagnosed hypertension, vertigo, depression and anxiety. He concluded that the plaintiff was totally disabled (R.453-455).

The plaintiff was treated at the Greater Pittsburgh Neurology Consultants between July 28, 2009 and July 5, 2011. Vertigo was diagnosed (R.440-442, 457-469).

The plaintiff was hospitalized at St. Margaret Hospital from July 22, 2011 through July 25, 2011 for syncope, dizziness and hypertension. Blood pressure medication was prescribed and on discharge there were no activity restrictions (R.351-439).

The plaintiff was treated at the Renaissance Family Practice between March 23, 2010 and November 18, 2011 for hypertension, lumbar stenosis, alcohol abuse and depression. Medication was prescribed (R.443-452).

The plaintiff was certified for physical therapy for a six week period on February 27, 2012 (R.456).

In a report of a neuropsychological evaluation conducted on March 20, 2012, Glen Getz, Ph.D. diagnosed depression and a history of alcohol abuse. Treatment and medication were recommended (R.470-483).

In a report from Renaissance Family Medicine dated March 23, 2012 diagnoses of hypertension, lumbar stenosis, shoulder joint pain, dizziness and giddiness and alcohol abuse were noted (R.485-488).

The relevant regulations require explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. These regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he/she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he/she can do his/her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he/she can exert in engaging in work activity), and if his/her impairment enables him/her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in

assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> The claimant has not engaged in substantial gainful activity since December 1, 2009, the alleged onset date.
>
> The claimant has the following severe impairments: degenerative lumbar disc disease, partial tear of the right rotator cuff, and hypertension without complications.
>
> These conditions reduce his ability to do some basic work activities.
>
> The claimant also has reported symptoms of vertigo and orthostatic hypotension, but these appear to have substantially resolved upon cessation of alcohol intake… and are therefore nonsevere…
>
> The first functional area is activities of daily living. In this area, the claimant has mild limitation. He may be less active than before, but he still cares for his personal needs independently, prepares his own meals, does his own housework, uses public transportation … listens to radio, reads and watches television…
>
> The next functional area is social functioning. In this area, the claimant has no limitation…
>
> The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation…
>
> The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation that have been of extended duration…
>
> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere…
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work …

Asked if he thought he could work, the claimant replied that he would like an opportunity to work. He said he cannot do his old job because he does not have a license…

Once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning…

The claimant's work record was somewhat sporadic, and for thirteen years in a row he had no reportable earnings for Social Security purposes. He worked from 1999 to 2008, when his employer went out of business. Hence, he did not leave the workforce for medical reasons… the record provides evidence of an equally plausible reason for the gaps in the claimant's work history, and his current prolonged unemployment. He had been abusing alcohol until the end of 2011. He testified that before he stopped, he tended to drink in binges during which he would drink "a couple of six-packs a day" an amount that he admitted would keep him from working…

It is likely that the claimant's alcohol use had as much or more to do with his inability to find and hold a job than his other symptoms did. I note that the primary symptoms upon which Mr. Wiesinger bases his claim are vertigo, poor concentration, and nervousness. The record shows a direct link between these symptoms and his use of alcohol. Dr. Bakkila, his primary care physician, suspected alcoholism with associated neuropathy, and he advised the claimant to stop drinking. The claimant initially had trouble complying with treatment, but he did stop drinking. Dr. Bakkila observed late in 2011 that "he looks better …. All symptoms seem to be improved with alcohol cessation." This is strong evidence in favor of finding that the claimant's primary nonexertional limitations were linked to his excessive use of alcohol, since cessation of alcohol removed the limitations. Hence, even if I were to credit the claimant's testimony regarding his functional limitations, I would also have to conclude that substance abuse played a material role in any resulting disability.

At the hearing, the claimant did not present evidence suggesting that he has required or received more than minimal treatment for any of his medically determinable impairments… Therefore, after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms do not credibly rebut the above residual functional capacity assessment…

As for the opinion evidence, I have considered but I reject Dr. Bakkila's "permanently disabled" response on a check-block form furnished by the welfare

department. The doctor merely recited symptoms and diagnoses, and did not opine on the claimant's specific functional abilities and limitations. What is more, the symptoms of vertigo, anxiety, and depression …have little or no credible impact on the claimant's ability to do a job on a regular and continuing basis. I believe the residual functional capacity contained herein adequately accounts for any symptoms and limitations arising out of the rotator cuff tear. Hence, the form is not a medical statement worthy of substantial weight. I find that the State doctors were more accurate in assessing the claimant's limitations. The recent exams by Drs. Getz and Lichtenstein along with my observation of the claimant at the hearing, have caused me to differ somewhat in my residual functional capacity assessment, but the State determination is entitled to a great deal of weight.

The claimant is capable of performing past relevant work as a mortgage loan officer…

The claimant has not been under a disability … from December 1, 2009, through the date of this decision. (R.23-30).

The record demonstrates that the plaintiff suffers to some minimal degree from degenerative lumbar disc disease, a partial tear of his right rotator cuff and hypertension. The totality of the medical evidence suggests that he is not disabled except that of his treating physician who in an unsupported manner concluded that the plaintiff is disabled. As determined by the Commissioner, this conclusion is clearly contradicted by other medical evidence of record as well as the plaintiff's testimony. At best the different conclusions drawn by the doctors creates an issue of credibility, the resolution of which lies within the scope of the Commissioner's duties, Diaz v. Commissioner, 577 F.3d 500, 506 (3d Cir.2009), and she is free to reject the statements of the plaintiff's treating physician when opposite conclusions are drawn by other medical experts. Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. Lichtenstein v. UPMC, 691 F.3d 294, 300 (3d Cir. 2012). In the instant case, there are no material factual issues in dispute, the decision of the Commissioner is supported by substantial evidence, and judgment should be entered for the defendant and against the plaintiff. For this reason, it is recommended that the plaintiff's motion for summary judgment be denied; that defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

Within fourteen (14) days after being served with a copy, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Filed: September 2, 2014.

Respectfully submitted,
s/ Robert C. Mitchell,
United States Magistrate Judge